UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONNA B., o/b/o C.B.[1],

                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

19-CV-1163-FPG

DECISION AND ORDER

## INTRODUCTION

On March 8, 2011, Plaintiff filed an application for social security benefits ("SSI") on behalf of C. B. (or "child"), alleging disability beginning on March 7, 2011. Tr.[2] at 141-45. After the application was initially denied, Plaintiff timely requested a hearing and appeared before Administrative Law Judge ("the ALJ") William M. Weir on October 22, 2012. Tr. 39-91. On March 29, 2013, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 16-38. After the Appeals Council denied Plaintiff's request for review, Plaintiff brought an action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner. On August 4, 2017, the Honorable Michael A. Telesca issued a decision remanding the matter for further proceedings. Tr. 659-64. On December 14, 2017, following the remand order, the Appeals Council vacated the ALJ's March 29, 2013 decision and remanded the matter for further proceedings consistent with the remand order of Judge Telesca. Tr. 604-05.

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

1

On January 25, 2019, Plaintiff appeared at a new hearing with her counsel, Phillip V. Urban, Esq., and testified before William M. Weir, the same ALJ she appeared in front of in 2012. Tr. 607-28. The ALJ issued an unfavorable decision on April 26, 2019. Tr. 521-34. Plaintiff did not request review of the ALJ's decision by the Appeals Council, nor did the Appeals Council assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. Subsequently, Plaintiff brought the instant action pursuant to Title XVI of the Act seeking review of the final decision of the Commissioner.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 7, 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's motion for judgment on the pleadings is GRANTED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

---

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

## II. Disability Determination

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

In evaluating disability claims brought on behalf of children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id.* Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id.* If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. § 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six functional domains:

(i)  acquiring and using information;
(ii)  attending and completing tasks;
(iii)  interacting and relating with others;
(iv)  moving about and manipulating objects;
(v)  caring for yourself; and
(vi)  health and physical well-being.

20 C.F.R. §416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the

3

impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## DISCUSSION

### I. The ALJ's Decision

The ALJ found that C.B. was a school-age child on the date Plaintiff filed the application for disability. Tr. 524. At Step One of the sequential analysis, the ALJ found that C. B. had not engaged in substantial gainful activity since the alleged onset date of March 8, 2011. *Id.* At Step Two, the ALJ found that C. B. suffered from several severe impairments: attention deficit hyperactivity disorder (ADHD), opposition defiant disorder (ODD), enuresis, encopresis, and anxiety disorder. *Id.* The ALJ also found that C. B.'s asthma as a non-severe impairment. Tr. 524-25.

At Step Three of the analysis, the ALJ found that the severity of C. B.'s impairments did not meet or equal the criteria of any Listing. Tr. 525. The ALJ then assessed her functioning in the six functional domains, and determined that her impairments did not cause marked limitations in two domains or an extreme limitation in at least one domain of functioning. Tr. 528-34. The ALJ therefore concluded that C. B. was not disabled within the meaning of the Act. Tr. 534.

### II. Analysis

Plaintiff advances several arguments in support of her application, essentially arguing that the RFC determination was not supported by substantial evidence. ECF No. 7-1 at 15-21.

4

Specifically, Plaintiff submits that the ALJ failed to consider a closed period of disability that her counsel explicitly requested at the hearing, which led to the ALJ's reliance on the evidence beyond the closed period and his erroneous disability determination. *Id.* at 20. Plaintiff also argues that the ALJ failed to properly assess the child's limitations in the acquiring and using information, interacting and relating with others, and caring for herself domains. *Id.* at 19-20. The Court disagrees.

1. Closed Period of Disability

A "disability" under the Act requires an impairment that "lasted or must be expected to last for a continuous period of at least 12 months." 42 U.S.C. § 416.909. "A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status." *Pettaway v. Colvin*, No. 12-CV-2914 (NGG), 2014 WL 2526617, at *13 (E.D.N.Y. June 4, 2014) (quotation omitted). When deciding a disability claim, "if a claimant is disabled at any point in time, the ALJ should consider not only whether [p]laintiff was disabled at the time of the hearing, but also whether [p]laintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of [her] claim." *Williams v. Colvin*, No. 15-CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016). "It is particularly necessary for the ALJ to consider whether a closed period of disability existed where the record shows that plaintiff's condition has improved significantly over time as the result of a discrete event." *Robertson v. Berryhill*, No. 6:16-CV-06481 (MAT), 2017 WL 3574626, at *2 (W.D.N.Y. Aug. 18, 2017) (referring to surgery). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a

5

'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted).

There is no dispute that Plaintiff's counsel requested a closed period of disability from March 7, 2011 through December 28, 2016 at the hearing. Tr. 610. Plaintiff argues that despite her counsel's request, the ALJ failed to consider the closed period of disability and inappropriately relied on the 2018 opinion of Dr. Ransom and the 2019 teacher questionnaire – the evidence dated after the closed period of disability – in making his determination regarding C. B.'s functioning. ECF No. 7-1 at 15-17, 20. In his decision, the ALJ noted Plaintiff's counsel's request to consider the closed period of disability, however, it does not appear that he had done so as he did not identify the closed period in his analysis when he found the child non-disabled, nor did he considere the evidence issued after December 29, 2016 to make his disability determination. Tr. 521, 534 ("the claimant has not been disabled . . . since March 8, 2011, the date the application was filed").

Even though this error is often found harmful, *see Pena*, 2002 WL 31487903, at *11, this Court does not find it so here because the record does not show that C. B.'s condition improved significantly over time, and because the ALJ's ultimate disability determination is supported by the record. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the court found "no reasonable likelihood that [the ALJ's] consideration of the same doctor's 2002 report would have changed the ALJ's determination that [p]etitioner was not disabled during the closed period"); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). Even assuming, *arguendo*, that the child's condition may have improved after the closed period of disability as Plaintiff suggests, remand would still not be warranted here because her improved condition was not disabling. *Williams v. Colvin*, No. 15-

CV-144S, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016) (the ALJ did not err when he did not consider a closed period of disability because, although the child's condition may have improved, the condition improved was not disabling).

Additionally, Plaintiff's argument that the ALJ erred in relying on Dr. Ransom's 2018 opinion and 2019 teacher questionnaire produced by one of C. B.'s teachers is misplaced. It has been well-recognized that medical opinions given after the relevant period for establishing disability can be taken into consideration if they are relevant to the claimant's condition prior to that date. *See Graham v. Comm'r of Soc. Sec.*, No. 16-CV-142 (LDH), 2017 WL 1232493, at *5 (E.D.N.Y. Mar. 31, 2017) ("[e]vidence bearing upon an applicant's condition subsequent to the [date last insured] . . . is pertinent evidence in that it may disclose the severity and continuity of impairments prior to the date last insured") (internal citations and quotations omitted); *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n14. (W.D.N.Y. 2003) (the expiration date should not act as a cutoff with regard to medical reports considered on a specific issue). Here, there is no doubt that Dr. Ransom's intelligence examination and the questionnaire provided by Johanna Woodams, the child's eighth-grade teacher, are relevant to the determination of C. B.'s functioning during the period at issue. Additionally, Plaintiff overlooks the fact that the ALJ has also relied on the child's medical and educational records from 2011 through 2016 in his analysis to make the disability determination. Therefore, any error by the ALJ to consider a closed period of disability is harmless because the outcome of the case would not have changed had the ALJ explicitly considered it and because the ALJ's ultimate disability determination is supported by the record.

2. The ALJ's Determination of the Child's Functioning

Plaintiff argues that the ALJ erred in determining C. B.'s functioning in the acquiring and using information domain. ECF No. 7-1 at 16-19. Generally, the domain of acquiring and using

information focuses on a child's ability to acquire information and to use the information that she has learned. 20 C.F.R. §416.926a(g). The regulations also provide that when analyzing the child's functioning in this domain, the ALJ can consider the child's inability to demonstrate understanding of words about space, size, time; inability to rhyme words or the sounds in the words; difficulty recalling important things learned in school; and difficulty solving mathematics questions. *Id.* § 416.926a(g)(3). "A child may be limited in [a]cquiring and [u]sing [i]nformation if her expressive and language skills are lower than the expected level of functioning for her age. Examples include a child who does not use language appropriate for her age, has difficulty explaining things or comprehending directions, or talks only in short, simple sentences." *Pomales ex rel. A.N.J. v. Comm'r of Soc. Sec.*, No. 18-CV-851, 2019 WL 6522854, at *3 (W.D.N.Y. Dec. 4, 2019) (citing SSR 09-3P, 2009 WL 396025, at *6 (Feb. 17, 2009)).

Here, the ALJ found that C. B. had less than marked limitations in the domain of acquiring and using information by relying on the 2011 opinions of consultative psychiatrist Dr. Santarpia, State Agency reviewing psychologist Dr. Meyer, as well as the reports of the child's teachers, all of whom opined that C. B. was able to follow and understand age-appropriate directions, learn in accordance with her cognitive functions, and that she was above average in reading, average in math, and below average in her writing abilities. Tr. 529. Plaintiff's contentions that the ALJ's reliance on these sources was erroneous because they did not consider her failing the third grade and receiving special education services is not persuasive. "[E]nrollment in special education classes does not, in and of itself, warrant a finding of [marked and] extreme limitations" because there is "too much variability from school district to school district . . . in the criteria for special education placement to justify reliance solely on [this] factor." *Walker ex rel. J.B. v. Astrue*, No.

1:06-CV-1180 (NAM), 2010 WL 2287566, at *10 (N.D.N.Y. June 3, 2010) (citing *Duran v. Barnhart*, No. 01 Civ. 8307(GWG), 2003 WL 103003, at *11 (S.D.N.Y. Jan. 13, 2003)).

Here, the record indicates that even though the child received some special education services at school, she, nonetheless, attended regular education classes during the relevant period. Tr. 499, 507-14, 898, 975. In 2013, C. B. repeated third grade, which Plaintiff argues is the reason why the ALJ should not have relied on Drs. Santarpia and Myers' stale opinions – because they were issued before the child repeated third grade. The Court does not find this argument convincing. *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition.") (citations omitted). In fact, Dr. Santarpia's findings were consistent with the overall findings of C. B.'s teachers and mental health therapists, who determined that C. B.'s functioning in this domain had not deteriorated to the point of being marked. Specifically, Dr. Santarpia indicated that C. B. attended regular education classes in 2011. Tr. 325. She opined that the child had age-appropriate expressive and receptive language, intelligible speech, coherent and goal oriented thought process, and even though C. B.'s cognitive functioning was below average and her judgment was impaired due to impulsivity, she, nonetheless, was able to follow and understand age-appropriate directions, ask questions, and request assistance in an age-appropriate manner. Tr. 327-28. C. B.'s first-grade teacher indicated that C. B. was above average in reading, average in math, and below average in writing. Tr. 173. In late 2012 and throughout 2013, C. B.'s IAP notes indicated that she was doing well at school, her thoughts were linear and focused on telling her story, and her expressive and receptive language was good. Tr. 974-96. Her March 2013 IEP report indicated that her functioning was at grade level, and even though she displayed appropriate reading fluency, solid reading, writing and math computation skills, she needed to improve task

completion, performance on tests and quizzes, reading comprehension, math problem solving skills, and paragraph writing. Tr. 508-09. Similarly, Dr. Ransom opined that C. B.'s generalized reading, arithmetic, and written abilities were in the low-average range, and that she would have no difficulties following and understanding instructions, sustaining concentration to complete age-appropriate tasks, and learn in accordance with her cognitive functioning. Tr. 833. In 2018, C. B.'s teacher indicated that she only had a slight problem with reading and comprehending written material, providing organized oral explanation and descriptions, and expressing ideas in written form. Tr. 811. Dr. Ransom further indicated that C. B. did very well in math, could explain herself using correct vocabulary, but did not always apply these skills to other subjects. *Id.*

Here, even though Plaintiff disagrees with the ALJ's findings, she has failed to prove that the child's limitations in this domain were marked. *Brault*, 683 F.3d at 448 (plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record). Because it is the ALJ, and not this Court, who is tasked with resolving the inconsistencies in the record, the Court sees no reasons to disturb the ALJ's findings that the child's limitations in this domain were less than marked. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (when resolving disability, the Court must keep "in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record") (internal citations omitted).

Plaintiff also takes issue with the ALJ's finding that C. B. had less than marked limitations in the domain of interacting and relating with others. ECF No. 7-1 at 19-20. The interacting and relating with others domain evaluates how well a child "initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. §416.926a(i). The regulations provide that children should be

able to interact by using facial expression, gestures, actions, or words, and "respond appropriately to a variety of emotional and behavioral cues[;] . . . speak intelligibly and fluently so that others can understand; . . . participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." *Id.* §416.926a(i)(1)(1) and (iii).

The ALJ recognized that C. B. struggled to get along with her sibling and peers at times, and was suspended a few times from school, but the ALJ, nonetheless, determined that C. B. had less than marked limitations in the domain of interacting and relating with others because the record demonstrated that she was well-liked by her peers, had positive family relationships, and was able to adequately interact with others. Tr. 531. Plaintiff takes issue with the ALJ's characterization of evidence and argues that C. B.'s ability to interact in this domain was marked because she was not liked by her peers or best friend, was intrusive with her physician, and inappropriate with her brother. Plaintiff also argues that the child's suspensions were not minor incidents as indicated by the ALJ, but serious infractions involving scratching and the stabbing of a classmate with a pencil, damaging property, and having physical contact with school personnel. ECF No. 7-1 at 19-20.

The Court does not find this argument persuasive because it was "within the province of the ALJ to resolve" conflicting findings. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Additionally, "the domain of interacting and relating with others concerns more than fights and disruptive behavior," *McClain v. Barnhart*, 299 F. Supp. 2d 309, 326 (S.D.N.Y. 2004), and includes the ability to "talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." *Id.*; *see also* 20 C.F.R. § 416.926a(i)(2)(iv). While the ALJ recognized that C. B. had some behavioral issues at home and

school during the closed period of disability, the record supports the ALJ's conclusion that these issues did not rise to the level of marked limitations suggested by Plaintiff. *Patrick B. o/b/o D.B. v. Saul*, No. 8:19-CV-0823 (LEK), 2020 WL 6287482, at *7 (N.D.N.Y. Oct. 27, 2020) (even though plaintiff was inappropriate outside the classroom, had serious problems following rules, and had difficulties communicating with people, the ALJ's finding that he was not markedly limited in interacting and relating with others was supported by substantial evidence).

Notably, starting in early 2011, the child attended mental health treatment to help her deal with angry outbursts and temper tantrums that she was having at home. Tr. 268-78. She was doing well academically, and her mother did not report her having any behavioral problems at school at the time. Tr. 268-78, 412. C. B.'s therapy goals were to acquire positive coping skills to deal with stress, increase her impulse control and compliant behavior, and follow up with her primary physician regarding medication therapy. *Id.* Notably, the record reflects that the child's parents were involved in a legal dispute related to domestic violence at the time that resulted in C. B. having supervised visitations with her father for a period of time. Tr. 421-31. Following treatment and successful medication routine, C. B. showed positive changes in her social skills at school, and improvement in controlling her anger and respecting adults' authority to the point where her mother did not report C. B. having any behavioral issues at home. Tr. 408, 438-40.

Treatment records subsequent to 2011 indicate that even though C. B. periodically had mood swings, difficulty listening, following directions, and getting along with others, and even had several short-term suspensions and detentions (Tr. 481-86, 499-500, 564, 596, 820-22, 850, 991, 993-94, 988), she, nonetheless, was a good student who got along with her parents, did well at school, had stable mood, and showed no aggression, temper tantrums, or fighting at school. Tr. 598, 840-43, 976-86, 994. C. B.'s mother reported that with the help of therapy and medications,

C. B.'s symptoms significantly improved, and she made a lot of progress utilizing her coping skills and following the family's rules, improved her listening skills, identified her problem behaviors and triggers, and was able to remove herself from stressful situations. Tr. 898, 909-11, 932, 936, 991, 993. In 2015 and 2016, C. B.'s primary physician reported that she was going well, got along with family and peers, did not have anger issues, and her symptoms were well-maintained by medication. Tr. 553-54, 583-84, 586, 594. In 2018, Dr. Ransom opined that the child had no difficulties adequately maintaining her social behavior. Tr. 833. Similarly, C. B.'s teacher opined that she did not have any problems in the interacting and relating with others domain. Tr. 813. She indicated that C. B. was a pleasant, kind, and caring student, who was always willing to help her peers. Tr. 817.

Lastly, the Court does not find error in the ALJ's evaluation of the child's impairments in the caring for yourself domain. To analyze a child's functioning in this domain, the regulations require the ALJ to evaluate "how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s her] physical and emotional wants and needs met in appropriate ways; how well [the child] cope[s] with stress and changes in [her] environment; [and] whether [the child] take[s] care of [her] own health, possessions, and living area." 20 C.R.F. § 416.929a(k). Examples of limited functioning in this domain include limitations in dressing or bathing oneself, engaging in self-injurious behavior, having disturbances in eating or sleeping patterns, and failing to spontaneously pursue enjoyable activities or interests. *Id.*

The ALJ acknowledged that C. B. was slow to ask for help and had personal hygiene issues. Tr. 533. This finding was consistent with Dr. Meyer, who opined that C. B. had marked limitations in this domain due to smelling of urine, having lice, and being slow to ask for help (Tr. 322), and C. B.'s first-grade teacher, who opined that C. B. had no problems in this domain, with the

exception of her having a slight problem in the ability to identify and assert her emotional needs and ask for help, and an obvious problem with taking care of her personal hygiene. Tr. 178. Notably, C. B.'s eighth-grade teacher opined that C. B. had no problems in this domain, except that she only had a slight problem taking care of personal hygiene, asserting her emotional needs, and using coping skills to meet daily demands of school environment. Tr. 815.

The ALJ acknowledged C. B.'s issue with frequent urination that she experienced in 2011, but noted that the record did not contain any treatment history related to this condition. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Additionally, he acknowledged the child's having lice, but alluded that it was caused by the condition of her home, which was subject of a CPS investigation. *Id.* C. B.'s school records demonstrate that the school identified C. B.'s mother, Plaintiff, as the reason why C. B. was having social problems at school due to being dirty and having lice. Tr. 359 ("School feels mo[ther[ is causing issues in the school and often dies [child's] hair when she comes home with lice."). Even though C. B. was not completely free from having behavioral issues and difficulties with sleeping during the relevant time period, her symptoms were well-maintained with medication and therapy. *Ramos ex rel. R.R. v. Astrue*, No. 11 Civ. 6142 (LTS)(FM), 2013 WL 919528, at *18 (S.D.N.Y. Mar. 12, 2013) (the child's functioning in several domains was less than marked because his symptoms were well-controlled, among other things, by medication). As previously indicated, C. B. successfully used coping skills, identified behavioral triggers, and was able to remove herself from stressful situations. Her physical appearance during examinations was appropriate and non-remarkable. She enjoyed listening to music, watching television, playing outside, going to school, playing board games with

friends and family, riding her bike, painting her nails, making crafts, drawing, and coloring. Tr. 833, 862, 888, 899, 908.

In sum, the Court finds that the ALJ's determination is supported by substantial evidence. While there is evidence in the record supporting that C. B. had some limitations, it is not this Court's function to re-weigh the evidence, and the ALJ's conclusion that C. B.'s limitations did not rise to the level of being marked is well-supported in the record. Accordingly, remand is not required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is GRANTED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: June 24, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court